```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :    No. 86 Cr. 1124 (JFK)
                                      :
ENRIQUE RIVERA [Eulogio Portes],      :    OPINION & ORDER
                                      :
                    Defendant.        :
--------------------------------------X
```

APPEARANCES

FOR DEFENDANT ENRIQUE RIVERA [Eulogio Portes]:
    John M. Hillebrecht
    Jessica A. Masella
    Jessica Park Wright
    DLA PIPER LLP (US)

FOR THE UNITED STATES OF AMERICA:
    Thomas John Wright
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is an emergency motion by Defendant Enrique Rivera a/k/a Eulogio Portes ("Portes") for a sentence reduction to time served and his immediate release from the Metropolitan Detention Center, Brooklyn ("the MDC"), or, in the alternative, for immediate transfer to home confinement, due to Portes's advanced age, compromised health, and his status as a medically "high-risk" inmate who is especially vulnerable to contracting the Coronavirus, COVID-19 ("COVID-19"). Portes brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) ("the Act"), commonly known as the compassionate release statute. The Government opposes Portes's motion as

1

procedurally barred because he did not satisfy the Act's administrative exhaustion requirements before seeking judicial intervention, and substantively meritless because Portes's preexisting medical conditions, while serious, do not justify a reduction to the already lenient sentence the Court imposed less than three months ago.

For the reasons set forth below, the Court finds that Portes is not entitled to relief pursuant to the Act because the provisions of 18 U.S.C. § 3582(c), which became effective on November 1, 1987, do not apply to his term of incarceration, which was imposed for criminal conduct that occurred prior to that date.  However, Portes's motion is GRANTED pursuant to Federal Rule of Criminal Procedure 35(b), in effect prior to amendment by Public Law 98-473 and applicable to offenses committed prior to November 1, 1987.  Accordingly, Portes is to be released from the MDC tomorrow, May 2, 2020, and he is to immediately begin serving the remaining 138 days of his original sentence in home confinement, after first undergoing a 14-day quarantine, both of which must take place at the locations designated in Portes's April 23, 2020 letter to the Court.  (See Letter from John M. Hillebrecht, DLA Piper LLP (US), to Hon. John F. Keenan (Apr. 23, 2020), ECF No. 72.)

**I.  Background**

In February 1987, Portes was charged with one count of participating in a narcotics conspiracy, in violation of 21 U.S.C. § 846.  Two months later, in April 1987, Portes pleaded guilty to the superseding indictment in this case, and the Court scheduled his sentencing for the following month, May 1987.  On May 15, 1987, Portes failed to appear for sentencing.  The Court issued a bench warrant for his arrest on May 22, 1987.

Portes remained at large until September 16, 2019, when he was arrested in the District of Massachusetts after the United States Marshals Service identified him through fingerprints that he submitted in connection with a job application.  On February 4, 2020, the Court sentenced Portes to a term of imprisonment of one year and one day with credit for the time served after his September 2019 arrest.[1]  To date, Portes has served more than seven months of that 12-month and one-day sentence.

Portes is 54 years old and suffers from a serious cervical disk injury, diabetes, high blood pressure, and sleep apnea.  At sentencing, the Court noted Portes's multiple physical ailments, and it recommended that he serve the remainder of his sentence

---

[1] The Court also imposed a three-year term of supervised release, which was later revoked at the Government's request because the statute that authorizes a term of supervised release where a term of imprisonment is imposed, 18 U.S.C. § 3583, did not come into effect until November 1, 1987—after the offense conduct with which Portes was charged and convicted had ended.  (ECF No 60.)

3

at the Federal Medical Center, Devens ("Fort Devens"), so that he could be near his family in Massachusetts, including his young child with special needs, and have access to a heightened level of medical care. Portes, however, was not transferred to Fort Devens. Instead, he remains at the MDC where, as of April 28, 2020, six inmates and 30 staff have tested positive for COVID-19. See Letter from M. Licon-Vitale & D. Edge, Wardens, Metro. Corr. Ctr. & Metro. Det. Ctr., to Hon. Roslynn R. Mauskopf, Chief Judge, E.D.N.Y. (Apr. 28, 2020), https://www.nyed.uscourts.gov/coronavirus. The Federal Bureau of Prisons ("the BOP") has placed Portes on its list of "high-risk" inmates who are especially vulnerable to contracting the disease.

On April 3, 2020 Portes[2] filed a motion ("the Motion") for reduction in sentence or transfer to home confinement on the grounds that the public health emergency caused by COVID-19 presents "extraordinary and compelling reasons" to warrant his immediate compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). (Mot. for Reduction in Sentence or Home Confinement (Apr. 3, 2020), ECF No. 66.) The Government opposed the Motion on procedural and substantive grounds, but it did not raise the argument that the First Step Act did not apply

---

[2] All of Portes's filings related to his request for compassionate release were made through his counsel.

4

to him.  (Letter from Thomas John Wright, Assistant United States Attorney, to Hon. John F. Keenan (Apr. 9, 2020), ECF No. 68.)  The Motion was heard during a telephonic conference on April 13, 2020.

On April 14, 2020, the Court issued an order urging the BOP to transfer Portes to Fort Devens, where, according to the BOP's website, there were no confirmed cases of COVID-19 at the time.[3]  (Order (Apr. 14, 2020), ECF No. 69.)  The Court also urged the BOP to expedite its consideration of Portes's petition for compassionate release, which his counsel submitted to the Warden of the MDC on or about April 8, 2020.  If the BOP elected not to immediately transfer Portes to Fort Devens, the Court ordered it to explain where and how Portes would serve his remaining five months in custody by no later than April 22, 2020.  In the meantime, the Court recommended that Portes's counsel confer with Probation to ensure that Portes's proposed release plan and location for a possible term of home confinement were acceptable.

On April 22, 2020, the BOP responded.  (Exhibit A to Letter from Thomas John Wright, Assistant United States Attorney, to Hon. John F. Keenan (Apr. 22, 2020), ECF No. 70-1.)  The BOP

---

[3] The BOP's website now reports that at least one inmate at Fort Devens has tested positive for the virus. See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 29, 2020).

5

explained that, due to modified operations in place to mitigate the spread of COVID-19, it was unable to inform the Court precisely when Portes would be transferred to his designated facility.  Further, based on the information in Portes's pre-sentence report, the BOP had determined that his medical conditions do not rise to the level of complexity necessary for treatment at Fort Devens.  Accordingly, the BOP had designated Portes to a facility other than Fort Devens, to which Portes would be transferred when inmate movement resumes.

The following day, Portes filed a letter challenging the BOP's assessment of his medical history and condition, and arguing that he was not receiving appropriate care at the MDC. (Letter from John M. Hillebrecht, DLA Piper LLP (US), to Hon. John F. Keenan (Apr. 23, 2020), ECF No. 72.)  Portes reiterated his urgent request to be removed from the MDC given his diabetes and other serious health issues and the ongoing spread of COVID-19 within the facility.  Portes's letter also confirmed that Probation had approved the locations in Massachusetts that he proposed for a term of home confinement.

Portes filed a second letter on April 29, 2020, notifying the Court that the BOP had updated his release date from September 17, 2020, to June 26, 2020.  (Letter from John M. Hillebrecht, DLA Piper LLP (US), to Hon. John F. Keenan (Apr. 29, 2020), ECF No. 73.)

6

**II. Discussion**

As a general matter, federal courts are forbidden from modifying a term of imprisonment once it has been imposed, "but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011). Two such exceptions are found at 18 U.S.C. §§ 4205(g) and 3582(c).

Section 4205(g), which was repealed effective November 1, 1987, is the original compassionate release statute, under which the BOP was authorized to initiate compassionate release proceedings "in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 572.40(a) (1992); Wade v. Warden Fairton FCI, 773 F. App'x 106, 107 n.3 (3d Cir. 2019); see also United States v. Booker, 543 U.S. 220, 300 (2005) (Stevens, J., dissenting in part) (noting that under § 4205(g) "[s]entencing judges had the discretion to reduce a minimum term of imprisonment upon the recommendation of the Bureau of Prisons").

"Section 4205(g) applies to inmates serving 'old law' sentences." Wade, 773 F. App'x at 107 n.3. Inmates serving "new law" sentences must avail themselves of § 3582(c)(1)(A), which was created by the Sentencing Reform Act of 1984 ("the SRA") and, similar to § 4205(g), allows a sentencing court to reduce a term of imprisonment on motion of the BOP where "extraordinary

7

and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); see also Wade, 773 F. App'x at 107 n.3; id. at 107 n.2 ("[P]re-SRA sentences are referred to as 'old law' sentences, while sentences imposed following the effective date of the SRA are referred to as 'new law' sentences."). The SRA essentially replaced § 4205(g) with § 3582(c).

In 2018, Congress passed the First Step Act, which, among other things, modified § 3582(c)(1)(A) to allow a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

### A. Compassionate Release

Although the parties never raised the issue, the first question the Court must decide is whether it has the authority to modify Portes's sentence pursuant to either compassionate release statute. The Court finds that it does not.

First, Portes seeks relief pursuant to § 3582(c)(1)(A), but it is well-established that the provisions of the SRA, which includes § 3582(c), apply only to offenses committed after the SRA's effective date of November 1, 1987. See 28 CFR § 572.40 ("18 U.S.C. 4205(g) was repealed effective November 1, 1987, but

8

remains the controlling law for inmates whose offenses occurred prior to that date."); Fed. Bureau of Prisons, Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)</u>, at 2 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf; <u>see also</u> <u>United States v. Wilkins</u>, 426 F. App'x 443, 446 (6th Cir. 2011) ("[C]ourts that have considered the issue have concluded that defendants who committed offenses prior to November 1, 1987, and therefore were sentenced under the pre-[SRA] law, are ineligible for sentence reduction under § 3582(c) because that provision was not in effect for their sentence."); <u>United States v. Argitakos</u>, 862 F.2d 423, 425 (2d Cir. 1988) (per curiam) ("Since Section 2 of the Sentencing Act of 1987 provides that the SRA 'shall apply only to offenses committed after the taking effect of this chapter,' Section 3582(c)(2) clearly does not apply to defendants' sentences.") (citation omitted).  Here, Portes's offense took place prior to November 1, 1987.  Therefore, the Court is not permitted to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Turning to the compassionate release statute which does apply to Portes, 18 U.S.C. § 4205(g), the Court also cannot grant Portes's request because the motion must be brought by the BOP, not by Portes. <u>See</u> 28 C.F.R. §§ 571.60, 571.62; Fed. Bureau of Prisons, Program Statement 5050.50, <u>supra</u>, at 14; <u>see also</u>

9

United States v. Woolum, No. 84 Cr. 21 (TBR), 2020 WL 1963787, at *2 (W.D. Ky. Apr. 23, 2020) (denying motion for compassionate release where the BOP did not bring the motion on the defendant's behalf pursuant to § 4205(g) and the defendant was not entitled to relief pursuant to § 3582(c)(1)(A)); United States v. Scarbrough, No. 73 Cr. 32 (HAB), 2019 WL 2482710, at *2 (N.D. Ind. June 14, 2019) (same).

Accordingly, the Court does not have the authority, pursuant to either compassionate release statute, to modify Portes's sentence or order his home confinement.

### B. Transfer to Home Confinement

Notwithstanding the above, former Federal Rule of Criminal Procedure 35 permits the Court to grant Portes the relief he seeks. See, e.g., United States v. Rice, 83 Cr. 150 (LGS), 2019 U.S. Dist. LEXIS 192041, at *7 (S.D.N.Y. Nov. 5, 2019) ("Former Federal Rule of Criminal Procedure 35(a) is applicable to offenses committed before November 1, 1987."). Rule 35(b), as applicable to offenses committed prior to November 1, 1987, provides:

> **Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The

10

>court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Fed. R. Crim. P. 35, Credits; see also United States v. Ellenbogen, 390 F.2d 537, 543 (2d Cir. 1968) ("Rule 35 is intended to give every convicted defendant a second round before the sentencing judge[.]").

Here, the Court finds the following extraordinary and compelling reasons to reduce Portes's sentence from one of incarceration to one of probation, with the special condition that he is to serve the remainder of his sentence in home confinement.

First, granting Portes's request for sentence modification is consistent with the purposes of sentencing, such as the need to promote respect for the law, protect the public, and provide just punishment, as well as guidance recently promulgated by the Attorney General, which authorizes the immediate release of defendants like Portes. See Memorandum from William P. Barr, Attorney Gen., to Dir. of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.  Here, Portes will still serve a sentence that balances the seriousness of his criminal conduct with the kinds of sentences available and the nature and circumstances of his offense.  Further, as

11

the Court noted less than 90 days ago during his sentencing, Portes's record in the more than three decades since he absconded reflect an individual who is not a danger to the safety of any other person or the community—indeed, quite the opposite.

Second, Portes's age and medical conditions—such as his diabetes and cervical disk injury—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while incarcerated at the MDC, and would substantially diminish his ability to provide self-care within that environment. See People Who Are at Higher Risk for Severe Illness, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 29, 2020) (listing diabetes as an elevated risk factor for a severe case of COVID-19).  "The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk." United States v. Park, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) (collecting sources).

Third, Portes has proposed a release plan that is acceptable to Probation and which will allow him to self-isolate

for a 14-day quarantine immediately after he is released from the MDC.

Finally, Portes is like other medically "high-risk" defendants in this Circuit who suffer from diabetes and two whom courts have recently granted release. See, e.g., United States v. Bess, No. 16 Cr. 156 (LJV), 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020); United States v. Zukerman, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020); United States v. Colvin, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020).

### III.  Order

In view of the above, it is hereby ORDERED that Enrique Rivera a/k/a Eulogio Portes, Register Number 17330-054, is RESENTENCED to TIME SERVED plus 138 days of probation, which must be served in home confinement and monitored by such technology and on such conditions as the U.S. Probation Department for the Southern District of New York deems appropriate.

It is FURTHER ORDERED that the following additional terms of Portes's probation are hereby imposed:

    1.  Portes must call his Probation Officer the day he is released, and he must strictly follow any instructions he receives at that time or in subsequent conversations.

    2.  Portes must call the New York State 24-Hour Coronavirus Hotline (1-888-364-3065) the day he is released, and he must

strictly follow the medical and social distancing advice he receives.

3. Portes must strictly self-isolate from others at the Haverhill, Massachusetts location designated in his April 23, 2020 letter, (ECF No. 72), until at least May 17, 2020.

4. Immediately upon completion of the 14-day quarantine, Portes must reside at the Lynn, Massachusetts location designated in his April 23, 2020 letter, (ECF No. 72), until at least September 17, 2020.

It is FURTHER ORDERED that Enrique Rivera a/k/a Eulogio Portes, Register Number 17330-054, be released from the MDC tomorrow, May 2, 2020.

## IV. Conclusion

For the reasons set forth above, Portes's motion for reduction in sentence or home confinement pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), is DENIED.  However, Portes's motion is GRANTED pursuant to former Federal Rule of Criminal Procedure 35(b).

**SO ORDERED.**

Dated:   New York, New York
         May 1, 2020

*/s/ John F. Keenan*
John F. Keenan
United States District Judge